IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRIUMPH IP LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>HUNTER INDUSTRIES INCORPORATED,<br><br>        Defendant. | C.A. No. 21-1075-MN<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT HUNTER INDUSTRIES, INC.'S RULE 12(c)**
**OPENING BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

FISH & RICHARDSON P.C.
Jeremy D. Anderson (No. 4515)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
(302) 658-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
Lance Wyatt
Rodeen Talebi
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
wyatt@fr.com
talebi@fr.com

*Attorneys for Defendant*
*Hunter Industries, Inc.*

Dated: November 2, 2021

# **TABLE OF CONTENTS**

**Page(s)**

I. NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

II. SUMMARY OF THE ARGUMENT .............................................................................. 1

III. STATEMENT OF THE FACTS ...................................................................................... 2

IV. LEGAL STANDARD ...................................................................................................... 4

    A. This case should be decided at the pleading stage under Rule 12(c). ............ 4

    B. The law of 35 U.S.C. § 101. ............................................................................ 5

V. ARGUMENT .................................................................................................................... 5

    A. The claims of the '291 Patent are patent-ineligible. ........................................ 5

        1. Claim 1 of the '291 Patent is representative. .......................................... 5

        2. *Alice* Step 1: Claim 1 of the '291 Patent is directed to the abstract idea of changing the communication channel if the channel is already in use. ........................................................................................ 6

        3. *Alice* Step 2: The claims of the '291 Patent contain no inventive concept to transform the abstract idea into patent-eligible subject matter. ...................................................................................... 10

    B. There are no claim construction or factual disputes preventing the Court from ruling on these issues at the Rule 12 stage. ................................ 13

VI. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014)................................................................................................ *passim*

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
  966 F.3d 1347 (Fed. Cir. 2020) (Chen, J., concurring) .......................................................10

*Ancora Techs. v. HTC Am., Inc.*,
  908 F.3d 1343 (Fed. Cir. 2018) ..........................................................................................11

*Appistry, Inc. v. Amazon.com, Inc.*,
  195 F. Supp. 3d 1176 (W.D. Wash., 2016) *aff'd sub nom. Appistry, LLC v. Amazon.com, Inc.*, 676 F. App'x 1008 (Fed. Cir. 2017) ............................................................................20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................................6

*Bilski v. Kappos*,
  561 U.S. 593 (2010)........................................................................................6, 8, 15, 16

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) ...............................................................................1, 15, 19

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) ....................................................................................12, 13

*Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.*,
  880 F.3d 1356 (Fed. Cir. 2018) ....................................................................................11, 16

*Cuvillier v. Sullivan*,
  503 F.3d 397 (5th Cir. 2007) ................................................................................................6

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018) ......................................................................................10, 16

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012) ..........................................................................................16

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
   815 F. App'x 529 (Fed. Cir. 2020) ................................................................................19

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) .............................................................................. *passim*

*Epic IP LLC v. Backblaze, Inc.*,
   351 F. Supp. 3d 733 (D. Del. Nov. 26, 2018) (Bryson, J.) ..................................................9

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
   955 F.3d 1317 (Fed. Cir. 2020), *cert. denied sub nom. Ericsson Inc. v. TCL Commc'n*, 209 L.
   Ed. 2d 752 (U.S. 2021) ....................................................................................................9

*Finjan, Inc. v. Blue Coat System, Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018) ........................................................................................8

*First-Class Monitoring, LLC v. Ups of Am., Inc.*,
   389 F. Supp. 3d 456 (E.D. Tex. 2019) ............................................................................19

*Genetic Techs. Ltd. v. Merial L.L.C.*,
   818 F.3d 1369 (Fed. Cir. 2016) ........................................................................................7

*Gibbs v. Coupe*,
   No. CV 14-790-SLR, 2015 WL 6870033 ........................................................................6

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016) ......................................................................................10

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
   855 F.3d 1322 (Fed. Cir. 2017) ..........................................................................10, 11, 16

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) ........................................................................................8

*Simio, LLC v. FlexSim Software Products, Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020) ......................................................................................20

*In re TLI Commc'ns LLC Patent Litigation*,
   823 F.3d 607 (Fed. Cir. 2016) ........................................................................................13

*Turbe v. Government of the Virgin Islands*,
   938 F.2d 427 (3d Cir. 1991) .............................................................................................6

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ......................................................................................10

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) ....................................................6, 12

*Victaulic Co. v. Tieman*,
    499 F.3d 227 (3rd Cir. 2007)..............................................................................................6

*Yanbin Yu, et al. v. Apple Inc. et al*,
    Case Nos. 2020-1760, 2020-1803 (Fed. Cir. June 11, 2021) .............................................14

**Statutes**

35 U.S.C. § 101 ................................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .................................................................................................... *passim*

Fed. R. Civ. P. 12(c) ..............................................................................................................2, 6

**I.      NATURE AND STAGE OF PROCEEDINGS**

On July 27, 2021, Triumph IP LLC filed this lawsuit accusing Hunter Industries, Inc. of infringing at least Claim 1 of U.S. Patent No. 7,177,291 via its Hunter Industries HC Controller. (D.I. 1 at ¶ 14.) On August 19, 2021, Hunter filed its answer, affirmative defenses, and counterclaims. (D.I. 8.)

**II.     SUMMARY OF THE ARGUMENT**

Changing the communication channel if the channel is already in use is an abstract concept ineligible for patent protection. The claims of the '291 Patent, which Triumph asserts in this action against Hunter are directed to this abstract idea and do not claim any inventive concept sufficient to confer patent eligibility on the claimed abstract idea.

Abstract ideas like this, when implemented using conventional computer components, are not eligible for patent protection under 35 U.S.C. § 101. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2357 (2014). This is especially true if the abstract idea is not directed to any improvement in technology and any purported "inventive concept" is limited to improving the abstract idea itself. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

The asserted patent does no more than withdraw a basic idea—changing the communication channel if the channel is already in use—from the public domain without disclosing any particularized application of this ideas Therefore, the asserted patent is invalid under 35 U.S.C. § 101 for failure to claim patent-eligible subject matter. Resolving this issue does not require more discovery or claim construction. Triumph's factual allegations, when presumed true, do not avoid dismissal. Therefore, to avoid waste of judicial and party resources further litigating an invalid patent, Hunter requests the Court enter judgment on the pleadings in favor of Hunter under Rule 12(c) of the Federal Rules of Civil Procedure and dismiss the Complaint with prejudice.

### III. STATEMENT OF THE FACTS

The '291 Patent "relates to a process for associating an apparatus to a communication network, in particular a local network, capable of sharing the same transmission frequency resource as another neighboring network." ('291 Patent at 1:9–12.) The specification explains that "[i]n an environment made up of multiple local networks, . . . an apparatus which has to associate itself with a network may also be able to communicate with a base station of another network. The problem then arises of the collision of the frames originating from the two networks at the level of this apparatus." (*Id.* at 1:31–40.) The applicant's solution is that when a terminal detects a collision, "instead of initiating a conventional association procedure, the terminal sends the network N1 a so-called emergency request, . . . asking the network N1 to initiate a dynamic frequency selection ["DFS"], to the exclusion of the current frequency." (*Id.* at 3:46–49.) "At the end of the DFS, the network N1 will have changed frequency and so the terminal will initiate a normal association procedure with regard to this new frequency . . . ." (*Id.* at 4:25–29.)

The purported solution, however, consists of nothing more than the use of conventional devices and technologies. The applicant made this clear through his own language in the specification. For example, the specification makes the following concessions about the use of conventional devices and technologies:

- "The present example lies within the framework of local networks of the **HIPERLAN 2 TYPE** (<<High Performance Radio Local Network Type 2>>)." (*Id.* at 2:20–22 (emphasis added).)

- "[D]etails regarding [HIPERLAN 2 TYPE] network can be found in particular in the following documents, published by the ETSI: (a) ETR0230002 V 0.1.2 (April 1999) . . . (HIPERLAN) Type 2; System overview (b) DTS/BRAN030003-1 V 0.h (August 1999) . . . HIPERLAN Type 2 Functional Specification Data Link Control (DLC) layer Part 1—Basic Data Transport

Function (c) DTS/BRAN-00240004-2 V 0.a (August 1999) . . . Packet based Convergence Layer for HIPERLAN and HIPERACCESS; Part 2: Ethernet Service Specific Convergence Sublayer (d) DTS/BRAN-0020004-2 V 0.a (July 1999) . . . HIPERLAN Type 2 Functional Specification; Radio Link Control (RLC) sublayer (e) DTS/BRAN030003-1 V 0.j (September 1999) . . . HIPERLAN Type 2 Functional Specification Part 1—Physical (PHY) layer . . . ." (*Id.* at 2:24–45.)

- "Each network comprises a central device or base station AP1, AP2. These base stations are the respective central facilities of each of the networks N1 and N2. In function terms, **they comprise the functionality of <<central controllers>> of the HIPERLAN 2 environment**." (*Id.* at 2:51–54 (emphasis added).)

- "[T]he terminal . . . **initiates a procedure called association**, and via which the terminal registers itself in the network N1 and obtains an identity in return. The **protocols generally implemented in respect of this operation require dialogs between on the one hand the terminal and on the other hand the network** . . . ." (*Id.* at 3:18–23 (emphasis added).)

- "[Collision] is detected by the terminal [] by the fact that certain frames or parts of frames are not decodable." (*Id.* at 3:35–36.)

- "**The emergency request is transmitted in the RCH field of the HIPERLAN 2 frame** of the network N1." (*Id.* at 3:54–55 (emphasis added).)

Accordingly, the alleged invention requires only a mobile terminal capable of connecting to a HIPERLAN 2 TYPE network, to detect a collision and send an emergency request message in HIPERLAN protocol, causing the network to initiate a dynamic frequency selection to change the frequency of the channel. That is nothing more that use of generic devices and technologies for their conventional purposes.

3

IV.     **LEGAL STANDARD**

     A.     **This case should be decided at the pleading stage under Rule 12(c).**

A Rule 12(c) motion may be made "after the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. 12(c). The difference between Rules 12(b)(6) and 12(c) is purely procedural as 12(c) requests for dismissal are governed by the same standards as 12(b)(6) motions. *See Turbe v. Government of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). Under Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3rd Cir. 2007) (citation omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Gibbs v. Coupe*, No. CV 14-790-SLR, 2015 WL 6870033, at *1 (D. Del. Nov. 6, 2015 (citation omitted). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J.,

concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1374 (Fed. Cir. 2016) ("Claim construction is not an inviolable prerequisite to a validity determination under § 101.") (internal citations and quotations omitted).

### B. The law of 35 U.S.C. § 101.

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

## V. ARGUMENT

The claims of the asserted patent is invalid under § 101 because they fail both prongs of the *Alice* test. First, each of the claims is directed to an abstract idea. Second, none of the claim elements contain an "inventive concept sufficient to ensure that the patents in practice amount to significantly more than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355.

### A. The claims of the '291 Patent are patent-ineligible.

#### 1. Claim 1 of the '291 Patent is representative.

Claim 1 of the '291 Patent is representative of the other claims of the '291 Patent because the claims contain the same essential elements and are directed to the abstract idea of changing the communication channel if the channel is already in use. The claims recite processes for performing the same essential steps: detection of the first transmission channel, determination of a collision on the channel between signals originating from the first network and from a second network, and

5

transmitting a change of channel request to the first network. Each of the claims add additional limitations regarding the abstract idea, but these are token pre- or post-solution activity that cannot confer an inventive concept. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610. The differences between these claims are immaterial to the § 101 analysis because each is drawn to the same abstract idea, and each includes elements performed by computing components that are "purely conventional," merely requiring "a generic computer to perform generic computer functions." *Alice*, 573 U.S. at 225. Claim 1 is thus representative of the other claims in the '291 Patent. *See PPS Data*, 2019 WL 1317286, at *5.

> **2.** *Alice* **Step 1: Claim 1 of the '291 Patent is directed to the abstract idea of changing the communication channel if the channel is already in use.**

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, claims of the '291 Patent are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of changing the communication channel if the channel is already in use. *See Alice*, 134 S. Ct. at 2356–59; *Bilski*, 561 U.S. at 611.

In assessing whether this claim is directed to an abstract idea, the Court begins by analyzing the "focus" of the claim, *i.e.*, its "character as a whole." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). For example, the Federal Circuit has explained that this Court should examine the patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). The '291 Patent's stated goal was to address the problem when a mobile attempts to connect to two networks that use the same frequency channel. The claimed advance of Claim 1 is detecting a communication channel for a new network, determining if the channel is already in use by another

6

network, and if so, and requesting a change of channel from the network new network. This is a concept, not an invention, and thus ineligible for patenting. *See, e.g.*, *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. Nov. 26, 2018) (Bryson, J.) ("[T]he idea of a chat session separate from the original website is not an invention; it is a concept. The asserted claims . . . recite the concept, but not the way to implement it."); *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1326 (Fed. Cir. 2020) ("Although written in technical jargon, a close analysis of the claims reveals that they require nothing more than [an] abstract idea."), *cert. denied sub nom. Ericsson Inc. v. TCL Commc'n*, 209 L. Ed. 2d 752 (U.S. 2021).

This case is similar to *Broadcom Corp. v. Netflix Inc.* in which a Northern District of California court examined a claim directed to "a way to determine whether a second system with higher quality content is available, and if it is, to deliver that higher quality content to the user." No. 3:20-CV-04677-JD, 2021 WL 4170784, at *9 (N.D. Cal. Sept. 14, 2021). The court found the claim at issue to be "directed to the abstract idea of switching between lower and higher quality content when higher quality content is available." *Id.* at *10. The court explained that the claim at issue "broadly claims a method of switching between lower and higher quality levels in a portable system without limiting the way in which it is determined such a switch can occur, or the way in which the switch is accomplished." *Id.* The same is true for Claim 1 of the '291 Patent as it broadly claims the functions for "determination of a collision on said channel between signals originating from the first network and from a second network" and "when said collision has been determined, transmitting a change of channel request to the first network." Similar to claim at issue in *Broadcom*, Claim 1 does not "limit[] the way" these functions are performed. *See* 2021 WL 4170784, at *10. Claims 1 is thus as abstract as the claim at issue in *Broadcom*.

7

The functional nature of Claim 1's limitations further supports its abstractness. In determining whether a particular claim is directed to an abstract idea, courts have focused on whether the claim is purely functional in nature rather than containing the specificity necessary to recite how the claimed function is achieved. As Federal Circuit Judge Chen commented, "while not all functional claiming is the same, simply reciting a functional result at the point of novelty poses serious risks under section 101." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 966 F.3d 1347, 1356 (Fed. Cir. 2020) (Chen, J., concurring) (citations omitted).

For example, in *Investpic*, the court asked whether the claim had "the specificity required to transform [it] from one claiming only a result to one claiming a way of achieving it." *Investpic*, 898 at 1167. To answer that question, the Federal Circuit has directed courts to "look to whether the claims focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("We therefore look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoked generic processes and machinery."). Therefore, the question in such cases is "whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017).

Claim 1 is directed to an abstract end-result. It lacks any of the specificity that the Federal Circuit has held is sufficient to confer patent eligibility. *Cf. Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) (holding eligible claims with the required specificity, but

8

ineligible those without it); *Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.*, 880 F.3d 1356, 1361–63 (Fed. Cir. 2018) (holding claims eligible where they were "directed to a **specific** improvement in the capabilities of computing devices") (emphasis added); *see also RecogniCorp*, 855 F.3d at 1326 (claims were ineligible because they were not directed to "a **specific** means or method for improving technology") (emphasis added). Claim 1 does not require a new or unconventional machine or process for changing the communication channel if the channel is already in use—it requires detecting collision on a channel and sending a message to the network to request a change of channel. "Inquiry therefore must turn to any requirements for *how* the desired result is achieved." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016). But Claim 1 does not describe how the desired result—changing the communication channel if the channel is already in use—is achieved. The mechanism to implement the idea is impermissibly unbounded in scope.

Claim 1 thus differs from the claims that the Federal Circuit has held to be eligible because they claimed specific means for improving specific computer technology or solving specific computer problems. For example, the Federal Circuit addressed the eligibility of claims directed to improving computer security in *Ancora Techs. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). In that case, the Federal Circuit held the claims eligible and stated, "Improving security—here, against a computer's unauthorized use of a program—can be a **non-abstract** computer-functionality improvement . . . done by a **specific technique** that departs from earlier approaches to solve a **specific computer problem**." *Id.* at 1348 (emphasis added). The court was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way." *Id.* The same is not true of Claim 1. It does not

require a specific and unconventional technique, and it does not identify any specific improvement to computer functionality, much less an unexpected way of effectuating such an improvement.

That Claim 1 is limited to communications with a base station, specifically, does not alter this analysis. "Most obviously, limiting the claims to [a] particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp.*, 830 F.3d at 1354. As the Supreme Court explained in *Alice, Parker* reinforces the proposition that the prohibition on patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment. *Alice,* 134 S. Ct. at 2358; *Parker*, 437 U.S. 584; *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (claims' "narrowing to cover only online transactions was an attempt to limit the use of the abstract guarantee idea to a particular technological environment, which has long been held insufficient to save a claim in this context") (internal quotations and citations omitted). Claim 1 is directed to an abstract idea of changing the communication channel if the channel is already in use, even if its limitations require practicing that idea in connection with connecting to a base station.

The claimed advance of representative Claim 1 of the '291 Patent is an abstract idea, not an invention. Accordingly, the representative Claim 1 fails the first step of the *Alice* analysis.

3. *Alice* Step 2: The claims of the '291 Patent contain no inventive concept to transform the abstract idea into patent-eligible subject matter.

Because the claims of '291 Patent are directed to an abstract idea, the Court must next determine whether the claims contain an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, the claims "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation

10

omitted). Here, the claims are broadly generic and do not contain meaningful limitations that would restrict them to a non-routine, specific application of the abstract idea.

The claims of the '291 Patent fail *Alice*'s second step because they are implemented on generic computer technology and therefore do not contain an inventive concept sufficient to confer eligibility. There is simply nothing "inventive" about using well-known devices (*i.e.*, mobile terminals and base stations) to perform their conventional functions (*i.e.*, detecting a communication channel, determining if the channel is already in use, sending a request to the base station to change the channel, and connecting to the base station on the new channel). As explained above, the abstract functional descriptions in the claims are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc'ns LLC Patent Litigation*, 823 F.3d 607, 615 (Fed. Cir. 2016) (claims failed *Alice*'s step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). Similar to the invalidated claims in *Intellectual Ventures I LLC v. Symantec Corp.*, nothing in the asserted claims "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." 838 F.3d 1307, 1316 (Fed. Cir. 2016).

Courts have repeatedly held that the presence of generic hardware and software like the kind recited in the claims of the '291 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g.*, *buySAFE*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive.").

Each of the steps recited in the claims is described only at a high level of generality. For example, representative Claim 1 of the '291 Patent recites "detection . . . of the first transmission channel," "determination of a collision," "transmitting a change of channel request," and

11

"associating the apparatus with a base station." To accomplish these high level functions, the patent recites the need for only off-the-shelf, conventional computer technologies. For example, the mobile terminals and base stations are "within the framework of local networks of the HIPERLAN 2 TYPE" and "details regarding this network [could] be found in [multiple existing] documents, published by the ETSI" ('291 Patent at 2:20–45), "[collision] is detected by the terminal [] by the fact that certain frames or parts of frames are not decodable" (*id.* at 3:35–36), and "[t]he emergency request [used to change the channel] is transmitted in the RCH field of the HIPERLAN 2 frame of the network N1" (*id.* at 3:54–55).

In other words, "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology." *Elec. Power Grp.*, 830 F.3d at 1355. No limitations in the claims of the asserted patent rise to the level of an inventive concept under step two of the *Alice* test. *See, e.g.*, *Yanbin Yu, et al. v. Apple Inc. et al*, Case Nos. 2020-1760, 2020-1803, at 9-10 (Fed. Cir. June 11, 2021) ("[T]he claimed hardware configuration itself is not an advance and does not itself produce the asserted advance of enhancement . . . which . . . is an abstract idea. The claimed configuration does not add sufficient substance to the underlying abstract idea of enhancement—the generic hardware limitations of claim 1 merely serve as a conduit for the abstract idea.") (quotations omitted).

The remaining claims of the '291 Patent (Claims 2–8) include similar limitations regarding the abstract idea and lack the specificity necessary to claim patent-eligible subject matter. These claims also do not contain any inventive concept amounting to "significantly more" than the abstract idea. They do not cover any unconventional computer components or techniques. Accordingly, they suffer from the same flaws as representative Claim 1. All of '291 Patent's claims simply apply the abstract concept of changing the communication channel if the channel is

already in use, and the Federal Circuit has been clear that the abstract idea itself cannot confer an inventive concept. *See BSG Tech*, 899 F.3d at 1290.

> **B.** **There are no claim construction or factual disputes preventing the Court from ruling on these issues at the Rule 12 stage.**

The issue of the patent eligibility is ready for the Court's consideration because there are no factual or claim construction issues. This case is markedly different from *Berkheimer* and the line of cases where factual issues have been found to exist in *Alice* Step 2. In *Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." 881 F.3d at 1369. The court added that "[t]he improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities . . . so we must analyze the asserted claims and determine whether they capture these improvements." *Id.* After finding that some claims "contain limitations directed to the arguably unconventional inventive concept described in the specification," the court held that there was a question of fact as to whether those claims perform "well-understood, routine, and conventional activities." *Id.* at 1370.

It should be noted, however, that "[t]he *Berkheimer* [] cases do not stand for the proposition that a plaintiff can avoid dismissal simply by reciting in the complaint that the invention at issue is novel and that the inventive concept resides in the abstract idea itself." *First-Class Monitoring, LLC v. Ups of Am., Inc.*, 389 F. Supp. 3d 456, 471 (E.D. Tex. 2019) (emphasis added). Furthermore, "[a]ny allegation about inventiveness, wholly divorced from the claims or the specification, does not defeat a motion to dismiss; only plausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) (internal quotations omitted).

Here, Triumph's bare and implausible allegations in the complaint cannot defeat this motion; otherwise, Rule 12 would be rendered toothless against plaintiffs who plead "magic words." Patentee plaintiffs should not have the power to unilaterally declare that their claims are inventive. *See Appistry, Inc. v. Amazon.com, Inc.*, 195 F. Supp. 3d 1176, 1183, n.6 (W.D. Wash., 2016) *aff'd sub nom. Appistry, LLC v. Amazon.com, Inc.*, 676 F. App'x 1008 (Fed. Cir. 2017) ("Plaintiff's position is absurd. Requiring the Court to accept such facts or legal conclusions (even in the form of an early expert declaration) would permit any plaintiff to circumvent the § 101 inquiry on an early motion to dismiss or motion for judgment on the pleadings simply by including a few lines attesting to the novelty of the invention."). Triumph's "inventiveness" allegations betray that it is keenly aware of the claims' vulnerability.

The Court's ineligibility analysis should disregard Triumph's boilerplate legal conclusions about the inventive aspects of its asserted patent. *See Simio, LLC v. FlexSim Software Products, Inc.*, 983 F.3d 1353, 1366 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)."). For example, with respect to the '291 Patent, Triumph alleges that "[t]he inventor's recognized inefficiencies of the prior art when the collision of the frames originating from two networks contacting the same apparatus and developed an improved method." (D.I. 1 at ¶ 11.) This is not a factual allegation—it is a legal conclusion by which Triumph attempts to unilaterally declare its patent is directed to eligible subject matter. *See Simio*, 983 F.3d at 1366 ("A statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory."). The Court should disregard these statements.

Once Triumph's conclusory legal allegations about the inventiveness of its asserted patent are properly disregarded, there is nothing left to preclude a determination of ineligibility on the pleadings. Accordingly, Hunter's motion is ripe, and it should be granted.

## VI. CONCLUSION

For the foregoing reasons, Hunter respectfully requests that the Court enter judgment on the pleadings in favor of Hunter and against Triumph pursuant to Rule 12(c), and dismiss this case with prejudice.

| | |
|---|---|
| Dated: November 2, 2021 | FISH & RICHARDSON P.C. |
| | By: */s/ Jeremy D. Anderson* |
| | Jeremy D. Anderson (No. 4515) |
| | 222 Delaware Avenue, 17th Floor |
| | Wilmington, Delaware 19801 |
| | (302) 658-5070 (Telephone) |
| | (302) 652-0607 (Facsimile) |
| | janderson@fr.com |
| | |
| | Neil J. McNabnay |
| | Lance Wyatt |
| | Rodeen Talebi |
| | 1717 Main Street, Suite 5000 |
| | Dallas, Texas 75201 |
| | (214) 747-5070 (Telephone) |
| | (214) 747-2091 (Facsimile) |
| | mcnabnay@fr.com |
| | wyatt@fr.com |
| | talebi@fr.com |
| | |
| | *Attorneys for Defendant* |
| | *Hunter Industries, Inc.* |